UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIGHT WORKS                          Case No. 25-cv-10446
ENGINEERING, PLLC,
d/b/a BRIGHT WORKS                    Hon. F. Kay Behm
ENGINEERING                          United States District Judge
ECONOMICS, PLLC,

     Plaintiff,

v.

CAMATIC SEATING INC., and
NEAL, GERBER, & EISENBERG
LLP,

     Defendant.

_____ /

## OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS (ECF No. 22)

## I.    PROCEDURAL HISTORY

On February 14, 2025, Plaintiff Bright Works Engineering, PLLC

brought suit against Camatic Proprietary Limited, Camatic Seating,

Inc., and Neal, Gerber, & Eisenberg LLP (NGE), seeking to recover

unpaid expert witness fees.  Following NGE's first motion to dismiss

(ECF No. 19), an amended complaint was filed on May 23, 2025, and

the motion was denied without prejudice.

On July 28, 2025, Bright Works obtained an entry of default against Camatic Seating, Inc. (Camatic), and on August 18, 2025, Bright Works voluntarily dismissed its claim against Camatic Proprietary Limited (an Australian company).  Camatic has not appeared in this action.

This matter is before the court on Defendant NGE's second motion to dismiss the claims against NGE only (ECF No. 22).  After contacting counsel for both parties to be heard on the motion, both agreed that the court could decide the motion without oral argument.  The court agrees that oral argument is not necessary and decides the motion on the briefs.  LR 7.1(f)(2).

For the reasons explained below, the court **GRANTS** the motion **IN PART** as to Count IV (promissory estoppel) and **DENIES** it as to Count III (unjust enrichment).

## II.    FACTUAL BACKGROUND

In this civil action, Plaintiff Bright Works seeks to recover unpaid expert witness fees in connection with a patent infringement case handled by Defendant Neal, Gerber & Eisenberg, LLP ("NGE") in the U.S. District Court for the Western District of Michigan on behalf of

non-party Camatic Proprietary Limited and Defendant Camatic

Seating, Inc.  On this motion, the court takes the facts as alleged in the

Amended Complaint (ECF No. 21).

On March 21, 2016, Camatic filed a complaint in the U.S. District

Court for the Northern District of Texas, Dallas Division, alleging Irwin

Seating Company infringed Camatic Proprietary Limited's U.S. Patent

No. 7,073,858 (the "Patent Litigation").  McCracken & Gillen LLC

("McCracken & Gillen"), a law firm located in Illinois, provided legal

representation to Camatic in the Patent Litigation from approximately

September 2015 through March 26, 2018.

In November 2017, Camatic retained Bright Works to serve as an

expert on economic damages in underlying Patent Litigation.  ECF No.

21, PageID.299.  In connection with that engagement, Bright Works

and Camatic entered into a written contract (the Services Agreement).

*Id.*  During the time that McCracken & Gillen represented Camatic in

the Patent Litigation, Bright Works corresponded with and took

direction from McCracken & Gillen on Camatic's behalf and submitted

all reports, communications, and work product to them.  *Id.* at

PageID.302.  In approximately March 2018, defendant Neal, Gerber &

Eisenberg became the law firm representing Camatic in the Patent Litigation, instead of McCracken & Gillen. During the time that NGE represented Camatic in the Patent Litigation, Bright Works corresponded with and took direction from NGE on Camatic's behalf and submitted all reports, communications, and work product to them. *Id.* at PageID.302-03. NGE never entered into the Services Agreement, nor was the Services Agreement amended to add NGE as a party or to substitute NGE in place of McCracken & Gillen with regard to the references in the Services Agreement to McCracken & Gillen. *Id.* at PageID.303. NGE did, however, direct Bright Works to complete work on behalf of Camatic in the Patent Litigation. *Id.*

Following Camatic's retention of NGE, the demand for Bright Works' services in the Patent Litigation substantially increased. *Id.* at PageID.305. Bright Works began invoicing Camatic in January 2018. *See id.* at PageID.323 (invoice dated 1/16/2018). In March 2018, Bright Works brought up to NGE the payment status of Bright Works' invoices with NGE. *Id.* at PageID.305. In June 2018, Bright Works informed Camatic that it had yet to pay any of Bright Works' invoices. *Id.* On or around June 3, 2018, Bright Works allegedly had discussions with NGE

4

regarding the payment status of Bright Works' invoices to Camatic, NGE informed Bright Works that they had had discussions with Camatic, and NGE promised that Bright Works would be paid for its continued participation as an expert in the Patent Litigation to induce Bright Works to continue its work as an expert. *Id.* at PageID.313. In early October 2018, in advance of a deposition in the Patent Litigation, Bright Works again expressed to NGE its concerns regarding the outstanding amount of Bright Works' invoices and the fact that Bright Works would need spend even more money in order to travel and stay in Chicago for that deposition. NGE allegedly "once again promised Bright Works that Bright Works would be paid in order to convince Bright Works to spend the additional funds to attend the deposition and allow the Patent Litigation to continue." *Id.* at PageID.314. In October 2018, however, Bright Works ceased providing expert services in the Patent Litigation due to a rising pile of unpaid invoices. *Id.* at PageID.306.

Eventually, Camatic obtained a substantial economic settlement in the Patent Litigation of approximately $1.435 million. ECF No. 21, PageID.306, 309. According to Plaintiff, NGE was paid, Camatic

received in excess of $1.275 million in connection with their representation of Camatic, but Bright Works was not paid.  ECF No. 21, PageID.310.[1]  Plaintiff claims that "[u]pon information and belief, Neal, Gerber & Eisenberg was fully aware of Camatic's strained financial condition during the time period of Bright Works' performance under the Services Agreement, failed to inform Bright Works of Camatic's strained financial condition, and repeatedly convinced Bright Works to continue providing its professional services to allow the Patent Litigation to continue."  *Id.* at PageID.311.

The disputes between the parties on this motion focus primarily on 1) whether NGE, as the attorney for Camatic, can be held responsible for a promise to pay Bright Works, and 2) whether the approximately six-year gap between the underlying dispute and the present suit bars relief.

*Whether NGE can be held liable to Bright Works.* The Services Agreement provides that "Camatic will be solely responsible for the payment of our [Bright Works'] invoices."  Defendant, in essence, says

---

[1] Other than two payments which are not fully detailed.  ECF No. 21, PageID.297.

that the express contract controls; the agreement was between Camatic and Bright Works only, and there was no expectation that NGE would pay Bright Works.  Plaintiff says that "with the balance of expert witness fees growing rapidly, Bright Works indicated to NGE numerous times that it intended to defer future services due to concerns it would not be paid.  NGE then made clear promises to Bright Works – that it would be paid if it continued providing its services to NGE and Camatic so that the litigation could continue.  Without Bright Works' reliance on NGE's promise that Bright Works would be paid, and Bright Works subsequently continuing to provide its professional services, the patent infringement case would have ceased and would not have settled."  ECF No. 25, PageID.548.  According to Plaintiff, NGE benefited from Bright Works' services by relying on and leveraging Bright Works' work as a damages expert to receive fees from Camatic in connection with the Patent Litigation.  Had Brights Works not continued to perform and provide its services, Camatic would not have received the settlement it did, and would not have had the funds to pay NGE.  While acknowledging that no contract existed between itself and NGE, Bright

Works brings equitable claims of promissory estoppel and unjust enrichment.

*Whether the statute of limitations on contract/quasi-contract claims has expired.*  Defendant NGE says the Bright Works invoices were due upon issuance under the Services Agreement.  ECF No. 22, PageID.512.  They also point out that Bright Works stopped work on the Patent Litigation due to unpaid invoices in October 2018.  That was greater than six years before this suit was brought, and therefore, the statute of limitations expired.  Plaintiff Bright Works says that their claim did not accrue until all the elements, including Bright Works' damages, occurred and could be pled.  According to them, Bright Works was damaged when it was not paid within 60 days of a judgment, dismissal, or stay entered in the Patent Litigation.  *See*, ECF No. 21, PageID 302 at ¶ 25(c).  On December 17, 2018, the Patent Litigation was dismissed with prejudice.  *See*, ECF No. 21, PageID 306 at ¶ 53.  Bright Works thus says that full and final payment was not due until within 60 days of December 17, 2018, or by February 15, 2019.  *See*, ECF No. 21, PageID 306 at ¶ 53.  And therefore, this civil action was

timely filed within the six-year statute of limitations on February 14,

2025.  *See* ECF No. 1.

The paragraph at issue in the Services Agreement reads as

follows, with the specific lines that are most at issue in underline:

> Invoices will be presented once a month to the Camatic designee identified at the conclusion of this letter.  McCracken & Gillen LLC will receive a copy of the invoice.  <u>Invoices are due on presentation and it is our understanding that Camatic will be solely responsible for the payment of our invoices.</u>  In the event that you disagree with or question any amount due under an invoice, you agree that you shall communicate such disagreement to us in writing within 30 days of the invoice date.  <u>Invoices for which payment is not received within 60 days of the invoice date shall accrue interest at an effective annual percentage rate of 12.0%, computed as of the invoice date</u>.  We reserve the right to defer rendering further services until payment is received on past due invoices.  All outstanding invoiced amounts due Bright Works must be paid prior to our issuance of reports or rendering of deposition or trial testimony.  <u>In any event, all amounts due Bright Works must be paid within 60 days following the earlier date of a judgment, dismissal, or stay entered in the subject litigation.</u>

ECF No. 21-2, PageID.320.

## III.  STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "construe the complaint in the light most favorable to the [nonmoving party] . . . [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id.* at 678.  The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6).  At the motion to dismiss stage, the court does not consider whether the factual allegations are probably true; instead the court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D.

Mich. 2019) (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings").  Nonetheless, it is well established that, in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56.  Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV.   ANALYSIS

### A.   Promissory Estoppel

The doctrine of promissory estoppel defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made."  *State Bank of Standish v. Curry*, 442 Mich. 76, 85 (1993) (citing Restatement (Second) of Contracts § 2 (1981)).  Because Michigan courts cautiously apply promissory estoppel,

they have held that not just any "promise" will satisfy the test.

*Avertest, LLC, v. Livingston Cnty., Michigan*, No. 20-1858, 2021 WL 3702196, at *6 (6th Cir. Aug. 20, 2021). A promise must be both "definite and clear" and a party's reliance on it "must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008) (citing *Ypsilanti Twp. V. Gen. Motors Corp.*, 201 Mich. App. 128, 134 (1993)). "[S]tatements that are indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct cannot serve as the foundation for an actionable reliance." *Farrow Grp., Inc. v. Detroit Land Bank Auth.*, No. 351138, 2021 WL 70649, at *5 (Mich. Ct. App. Jan. 7, 2021) (citing *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 227 (2019) (quoting *State Bank of Standish*, 442 Mich. at 85-86)). To determine whether a promise exists, the court must look to the totality of the circumstances surrounding the relationship or transaction and "objectively evaluate . . . the parties' words, actions, and relationship." *Id.* (citations omitted). Michigan courts "will not enforce vague or general promises that require speculation about the promiser's actual duties under the promise." *Avertest, LLC*, 2021 WL 3702196, at *6. Additionally, Michigan courts

have held that, while plaintiffs may "bring alternative counts of breach of contract and implied contract[,]" a contract "cannot be implied in law while an express contract covering the same subject matter is in force between the parties." *H. J. Tucker & Assocs. v. Allied Chucker & Eng'g Co.*, 234 Mich. App. 550, 573 (1999) (citing cases).

The promises at issue are described in the Amended Complaint using similar language. The Amended Complaint alleges that "Neal, Gerber & Eisenberg made actual, clear, and definite promises to Bright Works that Bright Works' invoices would be paid, in an effort to convince Bright Works to continue providing its professional services to allow the Patent Litigation to continue[,]" that "Neal, Gerber & Eisenberg promised that Bright Works would be paid for its continued participation as an expert in the Patent Litigation to induce Bright Works to continue its work as an expert[,]" that "Neal, Gerber & Eisenberg promised Bright Works that Camatic had obtained a source to fund the Patent Litigation and promised that Bright Works' invoices would be paid[,]" that "Neal, Gerber & Eisenberg once again promised Bright Works that Bright Works would be paid in order to convince

14

Bright Works to spend the additional funds to attend the deposition and allow the Patent Litigation to continue."  ECF No. 21, PageID.312-14.

NGE argues that "the 'promises' identified by Bright Works in its First Amended Complaint concern payments to be made by Camatic, not by NGE."  ECF No. 29, PageID.580.  Further, NGE says the complaint is "devoid of factual support for allegations that NGE made a 'definite and clear promise' to pay Bright Works for services that in fact produced reasonable reliance or forbearance on the part of Bright Works."  ECF No. 22, PageID.527.

NGE is correct; Plaintiff has not sufficiently alleged that there were any "clear and definite" promises that NGE would pay Bright Works.  The "*sine qua non* of the theory of promissory estoppel is that the promise be clear and definite."  *State Bank of Standish*, 442 Mich. at 85.  The allegations that NGE made promises that Bright Works "would be paid" are not sufficient to prove that there was a clear and definite promise made by NGE that *NGE* would guarantee Camatic's contract, or that NGE would *itself* pay Bright Works independently of Plaintiff's existing contract with Camatic.  *See Spice Corp. v. Foresight Mktg. Ptnrs, Inc.*, No. 07-4767, 2011 U.S. Dist. LEXIS 147278, at *47 (D.

Minn. Dec. 22, 2011) (although applying Minnesota law, "SanDisk's promise that Spice 'will be paid' is not a clear and definite promise to support a promissory estoppel claim."). Merely alleging that the promises were "clear and definite" is not sufficient to carry Plaintiff's burden; that allegation is conclusory absent a factual description of the promise itself. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("a plaintiff cannot overcome a Rule 12(b)(6) motion to dismiss simply by referring to conclusory allegations in the complaint that the defendant violated the law. Instead, the sufficiency of a complaint turns on its 'factual content[.]'"). Not only were there no clear and definite promises on the facts alleged, but given the indefiniteness of those promises, Bright Works could also not have "reasonably" relied on such promises as a firm commitment by NGE. *See Zaremba Equip., Inc.*, 280 Mich. App. at 41.[2]  Plaintiff fails

---

[2] Defendant also points out that Bright Works' promissory estoppel claims essentially describe an alleged promise to guarantee the Camatic Services Agreement, and thus "may also be barred by operation of the statute of frauds." ECF No. 29, PageID.583 n.2. That argument raises an interesting question of state law. *Compare, e.g., Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 548 (2000) (quoting *Lovely v. Dierkes,* 132 Mich. App. 485, 489 (1984)) (The Michigan Court of Appeals "has, on at least one occasion, held that 'where it would be inequitable to apply the statute of frauds' the common-law claim of promissory estoppel can bar application of the statute of frauds."), *and N. Am. Brokers, LLC v. Howell Pub. Sch.*, No. 330126, 2017 WL 535555, at *2 (Mich. Ct. App. Feb. 9, 2017)

to state a claim for promissory estoppel, and at this stage, the court will

not grant further leave to amend; Plaintiff already had such an

opportunity.  *See* ECF No. 19 (in prior motion to dismiss: "The

Complaint filed by Bright Works is devoid of any allegations that NGE

made a 'definite and clear promise' to pay Bright Works for services

that in fact produced reasonable reliance or forbearance on the part of

Bright Works."); ECF No. 20 (court order regarding Plaintiff's ability to

amend complaint rather than respond to the motion); ECF No. 21

(amended complaint).

---

("The continued validity of the judicially created promissory estoppel exception to
the legislative statute of frauds has been the subject of considerable debate."), *with
Crown Tech Park*, 242 Mich. App. at 548 n.4 (arguing that *Lovely* "is contrary to
well-founded principles of statutory construction and is inconsistent with
traditional notions of the separation of powers between the judicial and legislative
branches of government."); *N. Am. Brokers, LLC*, No. 330126, 2017 Mich. App.
LEXIS 212 at *6 n.2 (urging the Michigan Supreme Court to take up the issue
because "[t]he judicially created doctrine of promissory estoppel, as applied to the
facts of this case, subsumes the statute of frauds and makes the statute of frauds
irrelevant."); *see also* Restatement (Second) of Contracts § 139 cmt. c. ("reliance of
the kinds usual in suretyship transactions is not sufficient to justify enforcement of
an oral guaranty, where the evidentiary and cautionary functions performed by the
statutory formalities are not fulfilled").  However, the issue was not properly raised
in a footnote in a reply brief, and the court declines to address it here.  *See Sanborn
v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (holding that a party may not, for the
first time in a reply brief, raise issues that were not raised in the opening brief);
*Simmons v. Genesee Cty.*, No. 24-10815, 2025 LX 166987, at *15 n.2 (E.D. Mich.
Apr. 11, 2025) ("Because this argument was not raised in Defendants' briefing, and
Plaintiff did not have the opportunity to brief the issue, the court will not address it
at this time.").  In any event, this count is dismissed on other grounds and the court
need not reach the question.

NGE's motion must be granted as to Count IV (for promissory estoppel), and that count will therefore be dismissed with prejudice.

## B.   Unjust Enrichment

Under Michigan law, a claim for unjust enrichment requires a plaintiff to show: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)).  "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Morris Pumps*, 273 Mich. App. at 195; *see also Wright v. Genesee Co.*, 404 Mich. 410, 419 (2019) ("Unjust enrichment . . . doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another's expense.").  The requirement that the benefit be received "from the plaintiff" has sometimes been interpreted to mean that it must be received directly from the plaintiff, and "a benefit received indirectly is not enough." *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (citing

*Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 22 (2012)).  That

view appears to be a matter of unsettled law, however.  *See Roche*

*Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 925 (E.D. Mich. 2019)

("It is an open question whether Michigan law requires the benefit to

have been conferred directly by the plaintiff to the defendant, but the

case law appears to lean in favor of allowing claims based on indirect

benefits.").  For example, Michigan courts have permitted unjust

enrichment claims to proceed when a subcontractor indirectly conferred

a benefit on a defendant by performing work projects or supplying

materials which were never paid for but were used to complete the

eventual project.  *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d

601, 618 (E.D. Mich. 2017); *Kammer Asphalt Paving Co. v. E. China*

*Twp. Sch.*, 443 Mich. 176 (1993); *Morris Pumps v. Centerline Piping,*

*Inc.*, 273 Mich. App. 187 (2006).  Whether a specific party has been

unjustly enriched is generally a question of fact, but whether a claim for

unjust enrichment can be maintained is a question of law.  *Morris*

*Pumps*, 273 Mich. App. at 193.

 The parties largely argue over the meaning of three cases: *Morris*

*Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187 (2006) (implying a

contract between a general contractor and its subcontractor's material suppliers when "defendant [the general contractor] was necessarily a party to the decision to use and retain the materials without paying plaintiffs [the materials suppliers]"), *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192 (2017) ("refusing to imply a contract where 'the benefit defendants received . . . was nothing more than what all the parties contemplated' when negotiating their respective contracts"), and *Roche Diagnostics*, 427 F. Supp. 3d 905 (implying a contract because as alleged, "Roche alleges that Shaya obtained an indirect benefit from Roche through inequitable and misleading actions").  The general framework itself is well-settled: "[a] third party is not unjustly enriched when it receives a benefit from a contract between two other parties, where the party benefited has not requested the benefit or misled the other parties . . . .  Otherwise stated, the mere fact that a third person benefits from a contract between two other persons does not make such third person liable in quasi-contract, unjust enrichment, or restitution." *Morris Pumps*, 273 Mich. App. at 196 (quoting 66 Am Jur 2d, Restitution and Implied Contracts, § 32, p. 628).  Nor, however, does the mere existence of express contracts

between a plaintiff and third parties bar recovery from defendant in quantum meruit. *Id.* at 195.

In *Morris*, the prime contractor for a city sewer project engaged a mechanical subcontractor, which in turn contracted with certain suppliers, including the plaintiffs, to deliver materials used on the job. The mechanical subcontractor folded and abandoned the job before completing, and as a result the material suppliers were left unpaid. The prime contractor retained a substitute mechanical subcontractor to complete that part of the project, which it did by using the materials the plaintiff had delivered to the job site, even though it never paid for them. The suppliers sued the prime contractor on an unjust enrichment theory, arguing that it had benefitted from the use of the suppliers' previously delivered materials by the replacement subcontractor that finished the job. The court held that the suppliers were properly able to pursue that claim, and other courts have followed that holding. *See, e.g.*, *United States ex rel. Walter Toebe Constr. Co. v. Guarantee Co.*, 66 F. Supp. 3d 925, 934 (E.D. Mich. 2014) ("the value of what the plaintiff supplied — in this case, its labor — became an enduring component of the project as soon as the work was completed.

21

GCNA enjoyed that value when it proceeded to complete the project without doing (or re-doing) at least some of the work for which Toebe was not paid.").

In *Landstar*, by contrast, the Michigan Court of Appeals found that no unjust enrichment claim could lie.  Landstar was a transportation and logistics company that arranged expedited air transport for its customers.  *Landstar*, 319 Mich. App. at 196.  The defendant manufactured automobile steering assemblies and were supplied certain casting parts by a non-party supplier.  When the supplier had difficulty keeping up with shipments to the defendant manufacturer, it contracted with Landstar to expedite the shipments – but the supplier never paid Landstar for the successful shipments. Landstar obtained a judgment against the supplier, but also brought suit against the manufacturer to try and recoup what it was not able to collect against the supplier.  The court said, "the benefit defendants received—the timely delivery of steering assembly parts—was nothing more than what all the parties contemplated.  Further, all the parties contemplated that Contech [the supplier]—not defendants—would be responsible for the shipping charges.  As a result, . . . it cannot be said

that defendant's failure to pay for the shipping costs was unjust." *Id.* at 205.

*Roche* compared the two approaches and emphasized that *Landstar*'s different result relied on a key phrase from *Morris*: "the absence of some misleading act" by the defendant. *See Roche Diagnostics*, 427 F. Supp. 3d at 926. "The implication is that where the third party benefits by virtue of taking a misleading action, there may be a right of restitution against that party because, in that context, it would be unjust for the third party to retain its indirect benefit." *Id.* The *Roche* court determined that because the complaint alleged misleading actions on the part of the defendant, an unjust enrichment claim could lie even where the plaintiff had  separate express contracts with nonparties covering largely the same subject matter. *See id.*

Defendant NGE makes three related arguments.  The first is that the subject matter at issue, Bright Works' expert services and payment for same, is expressly covered by the Service Agreement between Bright Works and Camatic, and therefore no quasi-contract claims should lie. *See* ECF No. 22, PageID.520-21.  That argument is insufficient on its own; as *Landstar* acknowledged, the "mere existence of [] express

contracts between plaintiffs and [a third party] does not bar recovery from [a] defendant." *Landstar*, 319 Mich. App. at 203 (citing *Morris Pumps*, 273 Mich. App. at 194).  While the existence of a written contract *can* bar equitable claims against a non-party to that contract, the court does not agree that this Services Agreement bars these particular claims, as explained further below.

Second, NGE argues that "Bright Works has not alleged, and fails to explain, how payment for legal services by a client (Camatic) to an attorney (NGE) constitutes 'the receipt of a benefit by the defendant *from the plaintiff*.'  The 'benefit' alluded to by Bright Works was the payment of legal fees; such a 'benefit' was never intended to flow to or from Bright Works and it cannot be credibly asserted that NGE was unjustly enriched thereby."  ECF No. 22, PageID.524.  That view, raising the question of whether NGE obtained a direct or indirect benefit from Bright Works' services, ignores that the value of the labor provided by Bright Works was, according to the Amended Complaint, integral in obtaining the settlement that Camatic and NGE obtained in the Patent Litigation.  Accepted as true, NGE enjoyed the value of that labor when it proceeded to assist in settling the Patent Litigation on

Camatic's behalf without doing (or re-doing) at least some of the work
for which Bright Works was not paid, and relying on the services they
provided.  NGE's argument that this was too indirect a receipt of a
benefit "from the Plaintiff" is unavailing.  The benefit that allegedly
flowed to NGE was not (as NGE argues) the "payment for legal services
by Camatic to NGE," the benefit that is alleged to have flowed was the
value of the labor and services incurred by Bright Works, labor and
services which NGE allegedly relied on in arriving at a higher
settlement in the Patent Litigation than would have otherwise been
possible.

Still, "the mere fact that a third person benefits from a contract
between two other persons" does not make retention of that benefit
unjust. *Morris Pumps*, 273 Mich. App. at 196.  So finally, and most
importantly, NGE argues that "the benefits received by NGE were not
'unjustly retained' but were instead the precise 'benefits' contemplated
by the contracting parties, *i.e.,* payment for legal services."  ECF No. 29,
PageID.579.  While a jury could eventually agree with that view, on a
motion to dismiss the allegations are accepted as true.  And
"[r]egardless of whether defendant itself retained and used" the expert

reports provided by Bright Works, "or merely acquiesced in the . . . retention and use of the materials," in this case it is alleged that the "defendant was necessarily a party to the decision to use and retain the materials without paying plaintiffs." *See Morris Pumps*, 273 Mich. App. at 197.  If NGE's retention of the materials supplied by Bright Works had been completely innocent and without knowledge and had not participated in requesting additional services, the court might be inclined to conclude that NGE's enrichment was not unjust as a matter of law.  *See id.*  But where courts say that no unjust enrichment may lie, there is often "no allegation or evidence to support the contention that [defendant] requested any of the work performed by plaintiff or misled plaintiff to receive any benefit." *See Karaus v. Bank of N.Y. Mellon*, 300 Mich. App. 9, 24 (2012).  Here, however, Plaintiff has clearly alleged that NGE was intimately involved with the decision to retain – and indeed order more of – Plaintiff's services on behalf of Camatic. Plaintiff has alleged that NGE knew of Camatic's shaky financial situation and nonetheless offered reassurance to Bright Works that it would be paid if they continued to work on the Patent Litigation; as alleged, that is evidence that NGE both requested the benefit and

meaningfully misled Plaintiff.  ECF No. 21, PageID.305.  While NGE

reframes Plaintiff's argument to say that the alleged inequity is only

"that NGE was paid but Bright Works was not," ECF No. 29,

PageID.579, that framing disregards the related allegations that NGE

was aware that Bright Works would not be paid, yet still provided

reassurance that they would be paid in order to receive additional

expert services throughout 2018, which NGE then benefitted from.  *See*

ECF No. 21, PageID.311.  As alleged, NGE's conduct "seems more

analogous to the conduct of the general contractor in *Morris Pumps*,

whose decision to use and retain materials that had not been paid for

was not 'completely innocent and without knowledge.'"  *See Roche*

*Diagnostics*, 427 F. Supp. 3d at 925.  The amended complaint thus

sufficiently states a claim as to unjust enrichment at this stage.[3]

## C.    Statute of Limitations

NGE next argues that even if Bright Works could properly bring

equitable claims against NGE, Bright Works' claims for unjust

---

[3] Note, however, that if the breach of contract claims against Camatic
(presently in default) move forward to judgment, Plaintiff will be entitled to only
one recovery and will not be permitted to collect full judgments from both Camatic
and NGE.  *Morris Pumps*, 273 Mich. App. at 200 n.6.

enrichment and promissory estoppel are barred by the statute of limitations. A claim for unjust enrichment is the equitable counterpart of a legal claim for breach of contract. *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 328; 657 NW2d 759 (2002). Statutes of limitation may apply by analogy to equitable claims. *Taxpayers Allied for Constitutional Taxation v. Wayne Co.*, 450 Mich 119, 127 n.9; 537 NW2d 596 (1995). By analogy, the six-year limitations period for breach of contract applies to a claim for unjust enrichment. *Balsamo v. Dalcoma Prop., LLC*, No. 361114, 2023 Mich. App. LEXIS 3533, at *13 (Ct. App. May 18, 2023); Mich. Comp. Laws § 600.5813; *Leavine v. Gembarski*, No. 336094, 2018 WL 1020685 (Mich. Ct. App. Feb. 22, 2018) ("The statute of limitations for filing an unjust enrichment claim is [] the same six-year period as that prescribed for a breach of contract claim.").

According to Defendant NGE, Bright Works' claim of unjust enrichment accrued when Bright Works stopped work on the Patent Litigation due to unpaid invoices. Bright Works ceased rendering professional services in the Patent Litigation on October 20, 2018, and on October 23, 2018 provided notice that it was doing so based on Camatic's failure to pay Bright Works' invoices. ECF No. 21,

PageID.306.  The invoices themselves list a "due date" the same day as the "invoice date."  *E.g.*, ECF No. 21-3, PageID.324.  By the time Bright Works ceased rendering services, Camatic had been in breach of its payment obligations to Bright Works for months.  ECF No. 21-5, PageID.413; *see* Mich. Comp. Laws § 600.5827 (claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results").  This matter was filed on February 14, 2025, more than six years after that.

Bright Works, on the other hand, says that "final and full payment was not actually due until February 15, 2019, 60 days after the Patent Litigation was dismissed with prejudice."  ECF No. 25, PageID.570.  They take this from the line in the Services Agreement: "In any event, all amounts due Bright Works must be paid within 60 days following the earlier date of a judgment, dismissal, or stay entered in the subject litigation."  ECF No. 21-2, PageID.320.  Thus they say this action was timely filed on February 14, 2025 (within the six-year period).

At core, the court understands the parties to dispute how to read the Services Agreement between Camatic and Bright Works, whether

the language is ambiguous or determinable as a matter of law, and whether it can be applied to NGE at all.  The initial question of whether contract language is ambiguous is a question of law.  "If the contract language is clear and unambiguous, its meaning is a question of law.  Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Port Huron Educ. Ass'n MEA/NEA v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 323 (1996) (citations omitted).  The court's primary task in construing a contract is to give effect to the parties' intention at the time they entered into the contract.  *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 174 (2014).  The court must determine the parties' intent by examining the language of the contract "according to its plain and ordinary meaning."  In doing so, it should avoid an interpretation that would render any portion of the contract nugatory.  *Id.*; *see also Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 468 (2003) ("courts must [] give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory").  If two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous.  *Klapp*, 468

30

Mich. at 480.  The fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning. *Klapp*, 468 Mich. at 469.  Finally, "ambiguities are to be construed against the drafter of the contract."  *Id.* at 470-71.  "However, this rule is only to be applied if all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean."  *Id.*

Reading the Services Agreement to ensure each "word, phrase, and clause" has its "plain and ordinary meaning" admits multiple reasonable conclusions (absent additional extrinsic evidence of the contract's meaning).  One can reasonably read the contract language, as NGE argues, to say that the invoices were due on the day they were presented to Camatic.  The due date on the invoices backs up that interpretation.  To read the "60 day" clause as applying to all invoices automatically, as Bright Works argues, would seem to render nugatory the clause that the invoices were "due on presentation."  Yet the same goes for the opposite reading; assuming that Bright Works was

31

invoicing all of its labor on a regular basis, as the Amended Complaint alleges, then to read the "due on presentation" clause as dispositive of when the claims accrued would seem to render nugatory the entire final "60 day" clause (what effect does that clause have if in practice all amounts were due on presentation?).  The two provisions cut against each other, and "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity." *Klapp*, 468 Mich. at 467.  The two provisions irreconcilably conflict and at this stage, Plaintiff's well-pleaded allegations about the meaning of the contract are sufficient to proceed to factual development to determine their meaning.

Finally, NGE disputes whether that contractual term can be applied at all to NGE's alleged duty to pay Bright Works, when NGE was not a party to the Services Agreement.  NGE argues that if that contract term governs the statute of limitations issue, then the contract governs all issues in this case and no quasi-contract claims may lie against NGE:

> If Bright Works asserts that the Service Agreement governs the time permitted for filing a claim against NGE, then it must be argued that that the Service Agreement governs *all*

> obligations between Bright Works and NGE; if this is true, Bright Works is unable to assert equitable claims against NGE as a matter of law, . . . . If, however, Bright Works seeks to maintain viable claims in equity against NGE, Bright Works must concede that the Service Agreement does not govern all obligations between Bright Works and NGE; if this is true, then Bright Works cannot rely on a provision in the Service Agreement between Bright Works and Camatic in support of the notion that the statute of limitations for filing its initial Complaint against NGE was somehow extended even though Camatic had failed to pay Bright Works beginning in April of 2018.  Bright Works cannot have it both ways.

ECF No. 22, PageID.532.

Respectfully, that logic does not quite work.  The purpose of referring to the contract is not because the contract would govern all the obligations by NGE; the purpose is only to assess whether the contract provides indisputable evidence of when the unjust enrichment claim would have accrued, and those are severable issues.  The statute of limitations applies "by analogy" to equitable claims, *Taxpayers Allied for Constitutional Taxation*, 450 Mich. at 127, and so relevant contracts may provide evidence as to when a related quasi-contract claim accrued, but as mere evidence of timeliness, those contracts do not swallow the quasi-contract claims whole.  The contract language here is ambiguous

as to when amounts were due from Camatic. And because the statute of limitations applies "by analogy" to equitable claims, and the contract between Camatic and Bright Works is susceptible to multiple interpretations, the court is not convinced that the statute of limitations could have been triggered as a matter of law at an earlier date for NGE than it was for Camatic.

Because Plaintiff's well-pleaded allegations regarding how to read ambiguous contract language, and Plaintiff's allegations as to when unjust retention occurred, would establish that a quasi-contractual claim accrued against NGE within the statute of limitations, the motion to dismiss must be denied.

### D.    Laches

Finally, Defendant argues that the equitable doctrine of laches acts to bar Bright Works' claims against NGE. ECF No. 22, PageID.532. The doctrine of laches "is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." *Vance v. United States*, 965 F. Supp. 944, 946 (E.D. Mich., 1997) (citing *Kansas v. Colorado*, 514 U.S. 675 (1995). "The doctrine of laches is designed to promote diligence and prevent enforcement of a stale

claim." *Jabbar-El v. Sullivan*, 811 F. Supp. 265, 271 (E.D. Mich. 1992).

Laches "denotes the passage of time combined with a change in

condition which would make it inequitable to enforce a claim against

the defendant." *Tray v. Whitney*, 35 Mich. App. 529, 536 (1971); *see also*

Mich. Comp. Laws § 600.5815.  Laches focuses not so much on the

passage of time, which the statute of limitations alone considers, as on

claimant's blame for the delay and the delay's prejudicial effect.

*Eberhard v. Harper-Grace Hosps.*, 179 Mich. App. 24, 38 (1989).  In

other words, "laches is concerned with the *effect* of delay."  *Lothian v.

Detroit*, 414 Mich. 160, 168 (1982) (quoting *Sloan v. Silberstein*, 2 Mich.

App. 660, 676 (1966) (emphasis in original)).

    Thus for laches to apply, a party must prove "(1) a lack of diligence

on plaintiffs' part and (2) prejudice to the defendant."  *Regents of the

Univ. of Michigan v. State Farm Mut. Ins. Co.*, 250 Mich. App. 719, 734

(2002).  Here, NGE undoubtedly asserts a lack of diligence: "prior to the

filing of its initial Complaint, Bright Works *never* asserted that *NGE* --

as opposed to Camatic itself -- was somehow obligated to pay the

amounts owed to Bright Works."  ECF No. 22, PageID.533-34 (emphasis

in original).  However, NGE has not proven that they were prejudiced

by Bright Works' delay in bringing this case. NGE's argument regarding prejudice rests entirely on the idea that Plaintiff is seeking significant interest on the original contract balance, and NGE was prejudiced because Plaintiff allegedly never notified NGE they would seek recovery from NGE directly. *See* ECF No. 22, PageID.534-35 ("Bright Works claims an entitlement to interest incurred after October 23, 2018 in the amount of $271,279.24, more than double the amount owed when Bright Works ceased work. Interest on outstanding fees . . . was allowed to accrue for years whilst Bright Works sat on its hands and did nothing.").

But in their response, Plaintiff affirmatively waived all claims as to pre-filing interest against NGE. ECF No. 25, PageID.571 ("Bright Works only claimed [the interest amount] as part of the contract and account stated claims against *Camatic*") (emphasis added). While NGE argues that the Amended Complaint does not clearly state that point, it is hard to see why that matters if Plaintiff has now conceded the point in their favor. ECF No. 29, PageID.583. And NGE does not provide a reason at this stage to find that Plaintiff could not waive that damages claim as to NGE. Given that the only specifically identified prejudice to

36

their defense by NGE was the interest accrued over the intervening years, and Plaintiff has waived any argument as to pre-filing interest against NGE, laches does not act to bar Plaintiff's claims for some or all of the alleged unjust enrichment.

## V.   CONCLUSION

Therefore, the court **GRANTS** the motion **IN PART** as to Count IV (promissory estoppel) and **DENIES** it as to Count III (unjust enrichment).  Count IV is **DISMISSED** with prejudice.

**SO ORDERED**.


Date: November 12, 2025                    <u>s/F. Kay Behm</u>
                                           F. Kay Behm
                                           United States District Judge